Please the court. My name is David Abney. I'm representing the appellants. The discretionary function exemption comes into the case in two different ways. The first one is this decision as to whether to let David Khalaj go and get something to eat, drink, and take a smoke. I've gone through this from start to finish, and it seems to me that the discretionary function exemption applies to that decision. It's probably rude and counterproductive, and if I'd have been in their shoes, I would have called a paramedic and said, come take a look at this guy, but I don't think rudeness is a violation that's cognizable under the Federal Tort Claims Act. It's the second part of this. It's the decisions that are intertwined with the intentional torts, the assault, battery, false arrest, false imprisonment situation. That's where I believe the discretionary function exception does not apply and that the law enforcement proviso does apply. But I thought on that point, you're just saying it applies. I thought our case law was clear that the discretionary function supersedes the law enforcement proviso. Well, it can unless they're like this situation and like the situation in the Gashel case, the sort of ship's passing in the night. You have situations where there can be no possible justifiable motivation by the officers to do what they did. In Gashel, for instance, the court talked about the fact that if the officers there had the intent to inflict emotional distress, then indeed the discretionary function exception doesn't apply and the law enforcement proviso, which makes law enforcement officers liable for that sort of misconduct, does apply. And that's the Gashel is, I wrote it down here. It's 39 Fed Third 1420 and specifically the... Did you raise that argument below the Gashel case? Actually, the district court did. It's ER 022 and ER 0, pardon me, ER 22 and ER 23. The district court itself mentioned and discussed the Gashel case and even quoted the language about that by declining to dismiss the intentional infliction of emotional distress claim, that was proper because there was a question of fact about whether the arresting officers were motivated by malice. So the right language is in there, the right case is there, but then the district court just went on and said, well, discretionary function applies. And it can't apply in a situation like this if you believe what David Hallage and Juliette Umarin told the court. If you believe their evidence, their affidavits, their statements, declarations, and factor in a few other facts, you've got a factual dispute. And even the district court in its order repeatedly said that this is disputed, that is disputed. So help me understand what the dividing line would be because the problem, it seems, with your theory is that every Fourth Amendment case, and we get a lot of them, dealing with excessive force, you would never have the discretionary function exception apply. As long as there was a disputed fact, which, I mean, here the disputed fact is what the plaintiffs are saying. Well, often there aren't really disputed facts. You have to have a genuine issue of material fact that's in dispute. Here I believe you do. In many cases you don't. I mean, some of these cases that people bring, the facts as they present them are so hokey, it's beyond any sort of credibility. But here the problem is a standard that needs to be applied in this kind of case where the jurisdictional facts and the facts concerning the merits of the torts are so intertwined, then you wind up with a summary judgment standard. But even in the district court's order, the district court, you can see, is very disturbed about this and not comfortable with the factual dispute, mentions that there's factual dispute several times. And, in fact, if you go to ER 12 of the district court's order, the district court specifically noted that Halaj took steps to walk away from the officers, but one of the officers did not permit the de-escalation. Why? Then you go to the first... A quick technical question. Did you raise the Fourth Amendment claim in the district court, saying the Fourth Amendment limits the discretion of the officers here? I do not think the Fourth Amendment was specifically announced or used, but the general principle that David and his wife had the right to freedom from being unfairly and unjustly assaulted, imprisoned, and arrested, that was there in spades. That was definitely there. Do that again for me. Why haven't you forfeited the constitutional argument? I don't think there's a constitutional argument. In the sort of huge sense that we're trying to pursue a Fourth Amendment claim, we're not trying to pursue a Fourth Amendment claim. What we're trying to pursue is a claim under Arizona state tort law for intentional infliction of emotional distress, false arrest,  Those are what we're trying to pursue. We're merely saying that there is no justification under Arizona law or any other law for law enforcement officers to be attacking these two 54-year-old people out of the blue, if you believe their facts. Well, hold on. It wasn't entirely out of the blue. I mean, there was a conflict that occurred. I think that's pretty clear. I mean, I know that there's some disputed facts after that, but I think you might have a stronger case that we're truly just out of the blue, as you say. Well, the district court, on page 13, here's what the district court says. Without warning, the officers hit Halaj's right shoulder to force him to move, and Halaj tried to walk away from the altercation. Yeah, but that doesn't mean that it was out of the blue. I mean, there's a whole context to what happened here. I understand that you think that your client was treated poorly, but that doesn't mean that it was out of the blue. They didn't just walk up to somebody and start picking a fight. When I've got the district court saying that this occurred without warning and the district court saying that Halaj himself tried to walk away and the officers refused to de-escalate the situation, we've got a clash of facts here that's incredibly severe. And since if the summary judgment motion applies, standard applies, and I submit that it does, you can't decide this case in the district court order. You've got to let it go to the trier effect. Now, I know the trier effect in this kind of case is the district court, but still, it's a different approach to things. You actually have to weigh and evaluate in person the credibility of the various witnesses involved in this. If I were the trier effect, I wouldn't know what to do. Honestly, I would have no clue what to do in this case. This seems a little bit different, though, because I understand your argument on summary judgment and the summary judgment standard, but what we're dealing with here is a jurisdictional question, and the law is pretty clear that the plaintiff bears the burden to establish that the court has jurisdiction. So I'm not sure that you can just graft in the summary judgment standard into that analysis. Well, I'm not grafting in. This is the Ninth Circuit case law. The Ninth Circuit precedent is if you have an entanglement of the jurisdictional facts and the substantive facts, then you apply the summary judgment standard. And if you apply that standard, you cannot decide this case by fiat. You have to let it go to the trier effect. Let the witnesses come in. Let their credibility be gauged and judged. You've got a very, very strange situation here. You've got these Border Patrol officers saying, Well, hold on. We were viciously attacked by the 54-year-old man and his 54-year-old wife. No, I understand the factual dispute, but I still have a problem. Simply saying there are factual disputes does not address the subject matter of jurisdiction. And they can't question, which I think is certainly the question we have to start with here, and the applicability of the discretionary function exception to say that there are issues of fact here seems to me obviates, gets rid of the jurisdictional question. And as judges, I don't think we can do that. Are you okay that the Ninth Circuit says as long as there's questions of fact here, we skip over whether we have subject matter of jurisdiction? It can't possibly be. No, and that's the point of the Gasho case and the one the district court looked at, the one that I quoted, page 1434 of the Gasho case. If the Gashos can prove that the arresting officers arrested them with the intent of inflicting emotional distress, the Gashos may assert both false arrest and emotional distress claims. That's Ninth Circuit precedent. That controls. That was what the district court looked at and got it wrong. In this situation, based on the conflict of facts, the physical condition of the husband and wife, the spoliation of evidence, which removes all the objective evidence, and the apology from the government after they investigated, all those things combined together to say this is not an attack that could possibly be justified under any sort of policy consideration, and that's what the discretionary function rests on. Well, since you raised spoliation, and I don't think this case is going to go one way or the other on spoliation, haven't you forfeited spoliation also? No. You didn't say also, haven't you forfeited spoliation? No, Your Honor, because under Arizona law, spoliation, even though I don't like this, I even wrote a law review article about it one time, spoliation is not a cause of action recognized under Arizona law. What's recognized is that you can take from that spoliation an inference that the spoliator has indeed done something wrong, in fact, so wrong that they decided to remove the evidence. Now, here, of course, the government says, well, routine course and practice, and I say, well, hold on. You knew this was a serious incident. You knew these people were very upset. You knew that they threatened to get legal counsel. Just put this stuff on a hard drive, a memory stick, a disc, or something, and put it in the closet for a while and hold on to it, and they didn't do it. I see, unfortunately, I've burned through my time. If there's no further questions? We'll give you time for rebuttal, but thank you, Mr. Abney. I apologize to the presiding judge for having asked the question after his time expired. Judge Stein, no, you will have the counsel can always answer questions that the judges have, so that's not a problem. Ms. Barmore, you may proceed. Good morning, Your Honors, and may it please the Court. I'm Cynthia Barmore here for the government. I think I'd like to take a step back and focus on the context in which these claims have arisen. There is an extensive statutory and regulatory framework in place to maintain order inside international airports, and those procedures give officers discretion to inspect, search, and detain anyone trying to enter the United States from abroad. As in Nevis-Martinez, which this Court decided just this Tuesday, the discretionary function exception bars plaintiff's claims. I would note here that counsel did not explain why these claims are not forfeited here. The simplest way to resolve this case is forfeiture. I'm happy to answer any questions that this panel may have, but the government is also happy to rest on the briefing. If the panel... Well, let me ask one question. What were the type, and maybe you already kind of referenced this, but what type of social, political, or economic concerns did animate the conduct of the CPB agents? I mean, you're just saying they have discretion to pull anyone out of line, and that's enough. Yeah, so I would point this Court to the specific statutory and regulatory provisions that give officers discretion and relate that to this Court's precedent saying that when you have that type of discretion, it's presumed that officers exercise discretion when implementing those directives. So you have 19 U.S.C. 1582, which gives officers discretion to detain all persons coming from abroad. They are, quote, viable for detention or search. 19 CFR 162.6 and .7 similarly make all persons, quote, viable to inspection and search and provide that officers, quote, may stop, search, and examine any person. So let me ask how we, let's just say hypothetically, I know this didn't happen here, but hypothetically they walk up to somebody just standing in line, minding their own business, they take a baton out and start beating the individual. Would that be, I mean, would you say that was a discretionary function and therefore there's no waiver of sovereign immunity? Your Honor, in any case like that, you would look to whether there is judgment or choice that the officer can exercise. And any case is going to be context specific, but under those facts you described. Well, that's what I'm wondering is, I mean, do you, does the government win here simply because it started out as an inspection matter? I mean, clearly we have to determine that this somehow fits into the discretionary function. And so I'm just wondering where the limit is. I mean, you could see this being used fairly broadly to justify some, I mean, you know, hopefully all interactions of inspection don't result in what we have here, right? And, you know, the officers could have handled it differently. Maybe they should have handled it differently. And so where do we say the discretion came in, they may have misused it, but they had the discretion to do what they did? Of course, Your Honor. The government's actions would be limited in many instances by mandatory directives, whether those are set out in agency guidance, whether they're set out by the Constitution. But, of course, it is incumbent upon the plaintiffs to show that that discretion was removed by a mandatory directive. And they have not attempted to do so. Even here today they refer to, quote, general principles that they think limited the officer's discretion. But that is not the type of specific directive that this court requires to remove the discretionary function exception, which I'll note by statute applies even if the discretion is abused. Okay. Let's take a fact. Look, we've all been on TSA lines. It's a tense process. People are anxious to get where they want to go. People are very concerned about the reasons for all these TSA things, terrorism and destruction. It's a highly charged atmosphere. Assume for purposes of this analysis that the plaintiff's statement of facts are true, and they've come pretty close to what Judge Nelson was saying, that is, for no reason at all they were beaten up, they were locked in a cell, they didn't put up any objection, both of them. Assume that's true. Is that fact pattern susceptible to policy analysis, which is the second part of the operative test here? Your Honor, what this court recently said in Nevis-Martinez is that investigations are presumed to be susceptible to policy analysis. I would note first that plaintiffs never made a policy argument in the district court. They never contested that the second prong is satisfied. And perhaps in another case, plaintiffs could present an argument in district court to show that an exercise of discretion is not grounded in policy concerns. But plaintiffs did not attempt to do so below. They did not really attempt to do so here. And this court's decision in Nevis-Martinez really says that you can't presume that officers violate the Constitution, that you really have to evaluate the alleged actions based on what plaintiffs specifically say happened to give the government an opportunity to respond and defend. And that did not happen here. And for those reasons, we would urge this court to affirm the district court. I'm, again, happy to answer any other questions. Perhaps the issue wasn't raised here because it wasn't raised in the district court, but if they had raised a Fourth Amendment claim, how do we handle that? Because on the one hand, the argument is for a Fourth Amendment claim, there's no discretion to violate someone's Fourth Amendment rights. On the other hand, from the government's view, there's investigation-type stops. This is susceptible to policy analysis. How do we balance that? If this case did squarely present a Fourth Amendment claim, I'd rebalance those two things in deciding this. Well, this court has been fairly clear that if there is a clear constitutional violation, that that can remove the officer's discretion. That really comes into play in the first prong of the analysis, where when you first decide whether the officer has discretion to act at all, the Constitution could limit, in certain circumstances, that discretion. And that is where this court has evaluated the question. But again here, plaintiffs never raised a constitutional argument below. It was not evaluated by the district court. The district court actually expressly invited supplemental briefing on this question. It recognized that the actions later maybe were distinct from the first decision not to allow Mr. Kalaj to leave, and it invited plaintiffs to make this argument. Plaintiffs declined. The only argument they put forward was a legal argument that the district court recognized was foreclosed by Gosho. And under those circumstances, just as in American Vantage, this court does not consider those types of forfeited arguments. The court said that jurisdiction may not be sustained on a theory that the plaintiff has not advanced. And that is exactly the situation that we have here. Thank you, Your Honors. Okay. Thank you, Counsel. And Mr. Abney, we'll give you two minutes for rebuttal. Thank you, Your Honors. Two minutes more than I deserve probably, but thank you very much. I appreciate it. As far as policy analysis and policy considerations, there weren't any. If you accept what David and Juliet say, if you take a look at the other surrounding facts, you could conclude as the prior fact that there was no sort of justification for what happened. The officers seemed to have been upset, did not like their authority being challenged, and decided to deal with that in a physical way, and that's just wrong. As far as the Fourth Amendment, no. That was not presented as a Fourth Amendment kind of approach to the background of the right. But in the briefing below, the plaintiff's counsel did talk about the right to be free from having this sort of thing happen to you, that it's unfair, unjust, not right for officers of the government to attack people without justification. And, of course, the roots of the Fourth Amendment, it all goes back to the common law right, to be let alone, to have people not attack you out of the blue for no justifiable reason whatsoever. As I said before, what the prior fact would do with this, I don't know. There's a lot going on here. You've got definite disputes. In the answering brief, it keeps noting that there's disputes of fact as well, and the district court was very well aware of that. If you look at the district court order and certain portions of it, the district judge is saying that there was no actual justification for what happened. And that should be enough. We're dealing with Arizona torts where justification can be a defense, but you have to prove it, and here there's no policy consideration, no policy analysis on this earth that would justify what the Border Patrol agents did if you believe David and Juliet. If you disbelieve them, well, their case just tanks right there. I mean, we're all done. Thank you much for the extra time. I appreciate it. Thank you. Thank you, counsel, for both of your arguments in this case. The case is now submitted.
judges: Stein, Nelson, Lee